UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JAMES WRIGHT, JR., STEPHANIE
HERNDON, JOHN WRIGHT,

        Plaintiffs,

-vs-                                   Case No. 5:09-cv-66-Oc-10GRJ

EAGLE EXTERMINATING COMPANY,

        Defendant.

_____

## **O R D E R**

On February 9, 2009, Plaintiff John Wright and two others[1] filed a claim against their former employer, Defendant Eagle Exterminating Company ("Eagle"), alleging violations of the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* ("FLSA").

The case is now before the Court for consideration of Eagle's Motion for Summary Judgment (Doc. 31), to which Wright has filed a response in opposition (Doc. 37). The issue raised by the motion is whether the FLSA applies to the case; that is, whether Wright, as an employee, or Eagle, as a business enterprise, "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). The Court concludes that Eagle's motion is due to be granted.

---

[1]On January 5, 2010, the Court dismissed the claims of Plaintiffs James Wright, Jr., and Stephanie Herndon (Doc. 21). Judgment was entered the next day (Doc. 22), and an amended judgment including an award of attorney's fees was entered on February 29, 2010 (Doc. 30).

**Undisputed Material Facts**

Eagle was incorporated as a family-owned pest control business in 1986, and is located at 16129 C. R. 448, Tavares, Florida, 32778. Eagle currently has fifteen employees: eight pest control technicians, one pest control supervisor, three termite control technicians, two clerical employees, and one general manager. Eagle's pest control technicians spend the majority of their working hours treating homes and commercial businesses in Lake, Orange, Marion, and Sumter Counties.

Wright began working at Eagle in February 2003 as a pest control technician.[2] He was assigned Route No. 4 which covered Mount Plymouth/Sorrento, and the Tavares and Lake Gem areas in Florida. Eagle supplied him with various equipment for his job, including: a back pack sprayer, electric dusters, water bottles, bate guns, spray gun for use inside, a separate spray gun for outside, chemicals, and a company truck. Wright used a cell phone in connection with his work and Eagle reimbursed him for the monthly cost.

In addition to servicing customer's homes and businesses, pest control technicians such as Wright performed the following tasks: picking up chemicals at Eagle's corporate office as needed; filling up the water tanks on the company truck; retrieving customer phone messages from the corporate office; scheduling appointments; and dropping off

---

[2]In its motion and attached declarations, Eagle makes numerous allegations concerning the quality of Wright's job performance, the hours he worked, his general veracity, and his criminal conduct/history. None of these alleged facts are relevant to the issues presented at summary judgment, and serve no purpose other than to inappropriately attempt to prejudice the Court. Therefore, the Court will not give these allegations any further consideration.

daily work sheets at the office. Wright also made sure the company truck remained in good working order – he obtained parts such as batteries and windshield wiper blades for the truck at a NAPA Auto Parts Store in Mount Dora, Florida; took the truck for oil changes to a Classic Lube in Mount Dora; and took the truck for other repairs to the Tires Plus store in Eustis, Florida. Eagle had accounts at these three business – Wright never paid for any of the parts or services himself.

During his employment with Eagle, Wright had a roster of approximately 285 customers, and he was responsible for preparing a weekly service schedule. Wright typically serviced his customers' homes and/or businesses during the first three weeks of each month, leaving the last week of each month for rescheduling appointments. Wright did not solicit any new customers, generate any sales, make any purchases for the company (other than two back pack sprayers at Lowe's and Home Depot for which he was reimbursed), or order any materials online or otherwise for Eagle. Wright also did not purchase or repair any equipment for Eagle (aside from the company truck), did not use a fax machine for work, did not call any vendors, and did not make any out of state work-related calls. On any given day, a pest control technician would spend no more than fifteen minutes on his or her cell phone speaking to customers, all of whom where within Florida.

Wright did not receive an hourly salary; instead Eagle paid him a commission of 31% on all gross revenues collected from his customers. Wright resigned from Eagle in March 2008, and his last day of work was March 27, 2008.

## **Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(c)(2), the entry of summary judgment is appropriate only when the Court is satisfied that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In applying this standard, the Court must examine the materials on file and record evidence "in the light most favorable to the nonmoving party." Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. Celetex, 477 U.S. at 324. See also Fed. R. Civ. P. 56(e)(2). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

**Discussion**

Wright alleges in his Complaint (Doc. 1) that throughout his employment with Eagle, he routinely worked in excess of forty hours per week and was not compensated at a rate of not less than one and one-half times his regular rate of pay. Section 207(a) of the FLSA provides, in relevant part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Stated differently, the FLSA's overtime provisions apply in two circumstances: (1) where an employee is engaged in commerce or in the production of goods for commerce, *i.e.,* individual coverage; or (2) where an employee works for an enterprise engaged in commerce or in the production of goods for commerce, *i.e.*, enterprise coverage. Ares v. Manuel Diaz Farms, Inc., 318 F.3d 1054, 1056 (11th Cir. 2003). The burden is on the employee – Wright – to establish that the FLSA applies because of one of these two conditions. See e.g. Thorne v. All Restoration Servs., 448 F.3d 1264, 1265-66 (11th Cir. 2006). Eagle argues in its motion for summary judgment that the undisputed facts establish as a matter of law that neither type of coverage exists in this case.

**A.      Individual Coverage**

To establish individual coverage under the FLSA, Wright must show that he (1) engaged in commerce or (2) engaged in the production of goods for commerce. 29 U.S.C. § 207(a)(1).  To qualify as "engaged in commerce" under the FLSA, an employee must "directly participat[e] in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.* regular and recurrent use of interstate telephone, telegraph, mails, or travel."  Thorne, 448 F.3d at 1266 (citing 29 C.F.R. § 776.23(d)(2); 29 C.F.R. § 776.24).  An employee is "engaged in the production of goods for commerce" if the employee "was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on goods, or in any closely related process or occupation directly essential to the production thereof. . . ."  29 U.S.C. § 203(j).  See also Thorne, 448 F.3d at 1268.

Although Wright alleges individual coverage in his Complaint (Doc. 1), in his response to Eagle's summary judgment motion he does not argue that the evidence supports a finding of individual coverage.  And with good reason – the undisputed material facts (in particular Wright's own deposition testimony) demonstrate as a matter of law that Wright did not directly participate in the movement of persons or things in interstate commerce, or in the production of goods for commerce.  To the contrary, all of Wright's job

duties involved purely local activities – his customers, supplies, and equipment were all located in Florida. Wright also did not use a fax machine, or make any work-related out of state telephone calls. Stated differently, Wright did not make any purchases of goods for Eagle from outside of Florida, and did not sell any goods or services on behalf of Eagle to anyone outside of Florida.[3] The few purchases Wright made to repair and maintain his company truck, and the two back pack sprayers, also do not implicate interstate commerce. Thorne, 448 F.3d at 1267. See also Guzman v. Irmadan, Inc., 322 Fed. Appx. 644, 2009 WL 792939 (11th Cir. Mar. 27, 2009); Blanco v. Specialty Painting, Inc., 6:07-cv-828-Orl-22DAB, 2008 WL 4371341 at * 4-5 (M.D. Fla. Sep. 22, 2008).

The Court therefore concludes that Wright does not qualify for individual coverage under the FLSA.

---

[3] As discussed in more detail below, Wright's contention that the chemicals he used to spray his customer's homes and businesses were made in other states does not establish individual or enterprise coverage. First, Wright has not presented any admissible evidence establishing where the chemicals were in fact manufactured. Second, Eagle has provided uncontradicted evidence that it purchased all of its chemicals from a company located in Orlando, Florida. Moreover, the Eleventh Circuit has held that a customer who purchases an item from a merchant in Florida does not engage in commerce even if the merchant previously purchased the item from an out-of-state manufacturer or wholesaler. See Thorne, 448 F.3d at 1267. In other words, Eagle was the end-user/consumer of the chemicals, so the fact that they were potentially made outside of Florida and then sold to Eagle by a Florida retailer does not establish that Eagle, or any of its employees, engaged in interstate commerce. See Junkin v. Emerald Lawn Maintenance and Landscaping, Inc., No. 6:04CV1537ORL-31KRS, 2005 WL 2862079 at * 4 (M.D. Fla. Nov. 1, 2005) (simply transporting herbicides, insecticides, and fertilizers that were purchased within Florida but were originally manufactured outside of Florida and subsequently shipped into the state does not mean that an employee engaged in interstate commerce for purposes of individual coverage under the FLSA).

## B. Enterprise Coverage

Section 203(s) of the FLSA defines "an enterprise engaged in commerce or in the production of goods for commerce" as an enterprise that:

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or material that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000. . . .

29 U.S.C. § 203(s)(1)(A).

The phrase "engaged in commerce" reflects Congress's intent to regulate "only activities constituting interstate commerce, not activities merely affecting commerce." Thorne, 448 F.3d at 1266 (citing McLeod v. Threlkeld, 319 U.S. 491, 497 (1943)). See also 29 U.S.C. § 203(b) (defining "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."). Moreover, the FLSA's definition of "goods" "does not include goods after their delivery into the actual possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof." § 203(i). Applying these standards, Eagle argues that Wright cannot satisfy the first prong of § 203(s) because the undisputed facts demonstrate that Eagle does not engage in interstate commerce or in the production of goods for commerce.

In support of its motion for summary judgment, Eagle has submitted the Declaration of Ed Robinette, Eagle's Vice President and General Manager, which states that all of Eagle's customers are located in Lake, Orange, Marion, and Sumter Counties in Florida, all of Eagle's pest control services are performed within these four counties, and that Eagle has never solicited any customers outside of Florida (Doc. 32-1). Robinette further declares that he orders all bait traps, granules, liquid chemicals, and other pest control supplies from Univar USA, a company located in Orlando, Florida, and that, with the exception of the technicians' back packs, all pest control equipment is also purchased at Univar USA. According to Robinette, the company truck Wright used during his employment was purchased in Apopka, Florida in 1999.

In response, Wright has submitted his own declaration, which he contends creates a genuine issue of fact (Doc. 37-1). However, Wright does not contradict any of the statements in Robinette's declaration. Instead, he merely states, without any explanation, that he has "personal knowledge" that three types of chemicals Eagle used for pest control services – Dragnet SFR, Bifen LP Granules, and Intice Granular Bait – are manufactured in Pennsylvania, Texas, and Missouri, respectively. Although Wright declares that he worked with these chemicals on a daily basis while employed by Eagle, he does not explain how he knows where the chemicals were manufactured. More importantly, he does not contradict Robinette's declaration that Eagle purchased these chemicals from a Florida company. In other words, while Wright claims he knows where the chemicals were made, he has no personal knowledge – or other evidence – establishing how the chemicals made

9

their way into Florida, or where Eagle purchased them.[4]  There is also a lack of any evidence that Eagle purchased the chemicals for resale or that Eagle was not the end user or ultimate consumer of the chemicals.  Moreover, Wright's prior deposition testimony makes clear that he has no idea where any of the materials, equipment, or supplies originated from, or whether Eagle ever ordered anything outside of Florida, or that was made in another state – everything was simply provided to him by Eagle at the corporate office.  See, e.g., Doc. 35-2, pp. 36-39; Doc. 35-30, pp. 36-37.[5]

---

[4]Wright has attached to his declaration three documents each entitled "Material Safety Data Sheet."  Wright does not explain in his declaration (or in any other testimony or other evidence) the nature of these documents, how he obtained them, or how they bear any relevance to the issues in this case.  In fact, Wright does not mention them at all in his declaration - they are simply attached.

Eagle has filed a motion to strike these documents as unauthenticated (Doc. 38), to which Wright has filed a response (Doc. 39).  In his response, Wright attempts to explain that these documents are Material Safety Data Sheets that are required to be maintained by Eagle pursuant to 29 C.F.R. § 1910.  However, Wright has not explained how he came into possession of these documents, or if they are the same documents Eagle allegedly has in its possession.  Without more, the Court is not willing to consider unauthenticated documents in the course of ruling on summary judgment.  Eagle's motion to strike these documents will be granted.  See Saunders v. Emory Healthcare, Inc., 360 Fed. Appx. 110, 113, 2010 WL 65170 (11th Cir. Jan. 11, 2010); Williams v. Eckerd Family Youth Alternative, 908 F. Supp. 908, 911 (M.D. Fla. 1995); Fed. R. Civ. P. 56(e).

[5]Wright cannot create a material issue of fact simply by making unsupported statements, or by contradicting his prior deposition testimony.  See Citizens Concerned About Our Children v. School Bd. of Broward County, Fla., 193 F.3d 1285, 1295 n. 11 (11th Cir. 1999) ("Even on summary judgment, a court is not obligated to take as true testimony that is not based upon personal knowledge."); Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").

Thus, the only evidence before the Court conclusively establishes that Eagle did not engage in interstate commerce. See Sandoval v. Florida Paradise Lawn Maintenance, Inc., 303 Fed. Appx. 802, 805-06, 2008 WL No. 08-12903 at ** 2-3 (11th Cir. Dec. 18, 2008); Vallecillo v. Wall to Wall Residence Repairs, Inc., 595 F. Supp. 2d 1374, 1380-81 (S.D. Fla. 2009); Morales v. M&M Painting and Cleaning Corp., No. 07-23089-CIV, 2008 WL 4372891 at * 4 (S.D. Fla. Sep. 24, 2008); Polycarpe v. E & S Landscaping Serv., Inc., 572 F. Supp. 2d 1318, 1321 (S.D. Fla. 2008); Bien-Aime v. Nanak's Landscaping, Inc., 572 F. Supp. 2d 1312 (S.D. Fla. 2008); Junkin, 2005 WL 2862079 at * 4. See also Thorne, 448 F.3d at 1267 ("When goods reach the customer for whom they were intended, the interstate journey ends and employees engaged in any further intra state movement of the goods are not covered under the 'FLSA'").

Because the evidence is undisputed that Eagle did not engage in interstate commerce, Eagle does not qualify as "an enterprise engaged in commerce or in the production of goods for commerce," and as a matter of law is not subject to the FLSA's overtime compensation provisions. As such, Eagle is entitled to summary judgment.[6]

---

[6]Wright's reliance on Ramos v. Goodfellas Brooklyn's Finest Pizzeria, LLC, No. 08-61240-CIV, 2009 WL 259669 (S.D. Fla. Feb. 4, 2009) and Exime v. E.W. Ventures, Inc., 591 F. Supp. 2d 1364 (S.D. Fla. 2008) is without merit. In both cases, the plaintiffs submitted evidence establishing that they regularly handled and operated business equipment and supplies that were manufactured out of state, and regularly purchased business supplies with company credit cards. No such evidence exists in this case.

**Conclusion**

Accordingly, upon due consideration, Defendant Eagle Exterminating Company's Motion for Summary Judgment (Doc. 31) is GRANTED, and the Clerk is directed to enter judgment in favor of the Defendant and against Plaintiff John Wright. Defendant Eagle Exterminating Company's Motion to Strike the Declaration of John Wright and Exhibits Attached Thereto and Certain Portions of Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 38) is GRANTED IN PART AND DENIED IN PART. The documents attached to John Wright's Declaration (Doc. 37-2) are hereby STRICKEN. In all other respects, Eagle's Motion to Strike is DENIED.

Because all remaining claims in this case have now been disposed of, the Clerk is further directed to terminate any other pending motions and to close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 2d day of July, 2010.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record